**Jose Ramon DUENAS, Plaintiff,**

v.

**James J. NAGLE, James P. Murphy, Marvin Prieve, and Kyle Davidson, Defendants.**

No. 91–C–0024–C.

United States District Court, W.D. Wisconsin.

May 6, 1991.

 

James P. McLinden, Gonzalez & Assoc., Milwaukee, Wis., for plaintiff.

Eileen W. Pray, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

CRABB, Chief Judge.

Plaintiff brings this civil action for monetary relief pursuant to 42 U.S.C. § 1983 for violations of his procedural due process and Eighth Amendment rights in connection with prison disciplinary hearings. Jurisdiction is present under 28 U.S.C. § 1331.

Presently before the court is defendants' motion to dismiss for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Defendants argue that the acts of which plaintiff complains were random and unauthorized, and therefore, the state's provision of postdeprivation remedies provided plaintiff all the process he was due. Plaintiff argues that defendants' acts were not random or unauthorized, and that defendants' departures from state regulations amounted to completed violations of his procedural due process rights that should not bar his claim under § 1983. I conclude that defendants are correct: their acts were random and unauthorized, and the state's provision of an adequate postdeprivation remedy provides plaintiff with all the process he is due under the Fourteenth Amendment.

For the purpose only of deciding the motion to dismiss, I take as true the following well-pleaded factual allegations of the complaint. I have also taken judicial notice of certain regulations and procedures set out in the Wisconsin Administrative Code.

## ALLEGATIONS OF FACT

Plaintiff is a citizen of Cuba currently incarcerated in the United States Penitentiary in Leavenworth, Kansas. At all times material to this complaint, he was an inmate at the Columbia Correctional Institution in Portage, Wisconsin. At all times relevant to the complaint, defendant Murphy was the warden and superintendent at the Columbia Correctional Institution, defendants Prieve and Davidson served as members of the Adjustment Committee at

Columbia, and defendant Nagle was the Security Director for the Division of Corrections of the State of Wisconsin.

Between December 1986 and March 1987, plaintiff was the subject of at least 31 disciplinary hearings.

Wisconsin Administrative Code §§ DOC 303.76, 303.78 and 303.82 govern the hearing procedure for major conduct violations. § 303.76 provides that an inmate be given prior written notice of the charges against him. Sections 303.76 and 303.81 allow an inmate to present evidence in his defense, and mandate that the accused be given a written copy of the evidence the adjustment committee relied on in making its decision. Within ten days of an adverse decision by the adjustment committee, an inmate may appeal to the superintendent under § 303.76(7).

With respect to a majority of plaintiff's hearings, defendant Prieve did not give plaintiff a conduct report or other written notice of the charges against him or notice of the subsequent disciplinary hearings. Also on several occasions, defendant Prieve denied plaintiff an opportunity to call witnesses and to present a meaningful defense.

When plaintiff arrived at Columbia Correctional Institution, defendant Nagle informed him that he would remain in adjustment segregation as long as defendant Nagle was security director. Defendant Nagle carried out this threat.

Defendant Murphy sat on the adjustment committee for certain of plaintiff's disciplinary hearings.

On several occasions when defendants Prieve and Davidson served as adjustment committee members, they failed to provide written statements of the evidence they relied on in making their decisions to impose disciplinary sanctions on plaintiff.

As a result of defendants' actions, plaintiff was placed in solitary confinement and

segregation, suffered anxiety and mental distress, lost wages, lost the companionship of his family and friends, and was placed in federal custody as an INS detainee.[1]

On November 30, 1988, the Corrections Complaint Examiner found that in a majority of plaintiff's hearings, plaintiff did not receive notice of the charges against him and was not allowed to select witnesses for his hearings, and that on several occasions, plaintiff did not receive a written statement of the reasons for the adjustment committee's decision. On December 21, 1988, the prison system administrator affirmed this finding, and ordered prison authorities to expunge the conduct reports for which plaintiff did not receive notice and was denied witnesses, and to expunge the conduct reports or hold new hearings for the occasions on which plaintiff was not given a written statement outlining the reasons for the disciplinary action.

## OPINION

Plaintiff asserts that the state's regulations provide him a liberty interest in not being punished for major conduct violations in the absence of the procedural protections mandated by the Wisconsin Administrative Code, chapter DOC 303. However, this contention mischaracterizes the nature of the constitutional violations at issue.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court established the minimum constitutional requirements of due process to be afforded prisoners facing major misconduct disciplinary penalties. Those protections are: 1) written notice of the charges against the inmate prior to the hearing; 2) the limited right to call witnesses and to present documentary evidence; 3) the right to an impartial hearing body; and 4) a written statement of the evidence on which the hearing committee relied and the reasons for its decision. *Cain v. Lane*, 857

---

**1.** Plaintiff has alleged several other deficiencies in his disciplinary hearings, but under the applicable law governing disciplinary hearings in state prisons, those deficiencies do not give rise to a constitutional claim. At most, they amount to possible violations of state law. Because I am dismissing plaintiff's federal constitutional claims, I will decline to entertain plaintiff's state law claims. Therefore, I have not included in this opinion any of plaintiff's allegations of fact related to the state law claims.

F.2d 1139, 1145 (7th Cir.1988) (citing *Wolff,* 418 U.S. at 563–67, 94 S.Ct. at 2978–80).

That Wisconsin chooses to provide additional procedural protections to its inmates, such as the right to an advocate (§ DOC 303.78) or the right to appeal an adverse decision to the superintendent (§ DOC 303.76(7)), does not change what the Supreme Court has determined to be the minimum procedures necessary to protect the liberty interest of an inmate facing major penalties for misconduct. To the extent that defendants ignored those state regulations that coincide with the procedures mandated in *Wolff,* their conduct would violate plaintiff's constitutional rights. To the extent that defendants ignored any other aspect of those regulations, they may have violated state law, but they did not offend any constitutional right on the part of plaintiff. *See Shango v. Jurich,* 681 F.2d 1091, 1097–98, 1101 (7th Cir.1982) (because a state-created procedural right is not itself a liberty interest within the meaning of the Fourteenth Amendment, the question of what process is due is governed by federal constitutional law and not defined by the state procedures).

Defendants concede that they did not adhere to the procedures in question, but argue that plaintiff's complaint fails to state a claim under § 1983 because it is barred by *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

In *Parratt* and in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that the deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized act does not give rise to a procedural due process claim under § 1983 unless the state does not provide the plaintiff with an adequate post-deprivation remedy for the loss. *See Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 978, 108 L.Ed.2d 100 (1990). The Court reasoned that when a deprivation is the result of a state actor's random and unauthorized conduct, the state cannot pre-

dict that such conduct will occur, and consequently it is futile or impossible for the state to guard against the deprivation by mandating additional *pre* deprivation procedures. Therefore, the state can be expected only to provide an adequate *post* deprivation remedy. *Id.* In such cases, there is no constitutional violation unless and until the state fails to provide due process. *Id.* 110 S.Ct. at 983.

In *Parratt,* 451 U.S. 527, 101 S.Ct. 1908, prison employees negligently lost a hobby kit an inmate had ordered by mail; in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, a prison guard deliberately destroyed the plaintiff's personal property in his cell. In both cases, the Supreme Court held that the prisoners had not been deprived of their property without due process because they could have utilized a state tort claim procedure to gain compensation for the loss, and it would have been impossible for the state to have provided an additional procedure that could have prevented the type of deprivation in question. *See Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. In short, the Court held that it was beyond the control of the state to prevent a property loss resulting from a random, unauthorized act that did not derive from any "established state procedure." *Id.* at 541, 101 S.Ct. at 1916; *Hudson,* 468 U.S. at 532, 104 S.Ct. at 3203.

The *Parratt* rule is equally applicable to deprivations of liberty where the state is truly unable to prevent the random conduct effecting the deprivation. *Zinermon,* 110 S.Ct. at 987. *See also Guenther v. Holmgreen,* 738 F.2d 879, 882 (7th Cir. 1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985) (*Parratt* applicable to claims of false arrest and imprisonment). However, plaintiff contends that the deprivation in *Parratt* was caused by conduct that is very different from the conduct in the present case. He argues that *Parratt* involved an isolated instance of affirmative conduct, whereas this case involves noncompliance with procedures set up to prevent deprivations of liberty, which is an abuse of the state process that *Parratt* does not bar.

Plaintiff cites *Bretz v. Kelman*, 773 F.2d 1026 (9th Cir.1985), in support of his argument that *Parratt* is no bar to a § 1983 claim when the defendants effect a deprivation by abusing the state process itself. Plaintiff's reliance on this case is misplaced. *Bretz* involved an alleged conspiracy among law enforcement personnel to impair the plaintiff's right to a fair trial, not simply noncompliance with state regulations. Also, the holding in *Bretz* rests on the premise that by definition a conspiracy is not "random and unauthorized" conduct. Not only does plaintiff not allege a conspiracy, but the Court of Appeals for the Seventh Circuit has rejected the proposition that a conspiracy cannot constitute random and unauthorized conduct. *See Easter House v. Felder*, 910 F.2d 1387, 1399 (7th Cir.1990) (two-pronged conspiracy was random act because it represented single instance of improper conduct within single scheme).

■ Perhaps more important, it is clear that *Parratt* does encompass situations in which state officials fail to comply with state regulations they are charged with implementing. *See, e.g., Toney–El v. Franzen*, 777 F.2d 1224, 1227 (7th Cir.1985) (*Parratt* bars § 1983 claim challenging prison officials' erroneous calculation of inmate's custody and release dates, where adequate postdeprivation remedies exist); *Katz v. Klehammer*, 902 F.2d 204, 207 & n. 1 (2d Cir.1990) (postdeprivation process sufficient when public official fails to follow applicable regulation) (cited in *New Burnham Prairie Homes Inc. v. Village of Burnham*, 910 F.2d 1474, 1480 (7th 1990)). Recently, the Court of Appeals for the Seventh Circuit emphasized this holding in *Easter House*, 910 F.2d 1387.

In *Easter House*, the plaintiff claimed that employees of the Illinois Department of Children and Family Services, including the chief of that agency for the central district of Illinois, conspired to deprive the plaintiff adoption agency of its operating license by failing to utilize state regulations for bringing a licensee into compliance with minimum standards before the state revoked or refused to renew its li-

cense. *Easter House*, 910 F.2d at 1390–91 & n. 6. The court concluded that this conduct was random and unauthorized, and that consequently the plaintiff's claim was barred by *Parratt:*

> Section 1983 must be preserved to remedy only those deprivations which ... result from a *state*'s conscious decision to ignore the protections guaranteed by the Constitution. It should not be employed to remedy deprivations which occur at the hands of a state employee who is acting in direct contravention of the state's established procedures which have been designed to guarantee the very protections which the *employee* now has chosen to ignore.

*Easter House*, 910 F.2d at 1404 (emphasis in original). Where the state has circumscribed the defendants' discretion, the state cannot anticipate their decision to act in a manner "patently inconsistent with Illinois law." *Easter House* at 1401. The state could not have prevented such conduct by implementing any additional predeprivation procedural safeguards telling defendants not to disregard the regulations. *Id.* at 1401.

■ There is no appreciable difference between *Easter House* and plaintiff's case. As in *Easter House*, the state could not have anticipated that prison officials whose duties were narrowly defined would act in "direct contravention" of those established duties that the state set up to guarantee constitutional protection to plaintiff. The state had no realistic opportunity to learn of the repeated deprivations of plaintiff's liberty until plaintiff utilized the inmate complaint review system. Additional predeprivation procedures to prevent defendants' actions would have been no more feasible than in *Easter House*, and would have been no more likely to avert the deprivations in question. I conclude that defendants' noncompliance with established state procedures can only be characterized as random and unauthorized conduct.

■ Nevertheless, plaintiff argues that defendants' actions in this case represent the "*state*'s conscious decision to ignore the protections guaranteed by the Constitu-

tion." Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss at 5, quoting *Easter House*, 910 F.2d at 1404. Plaintiff does not contend that the existing state procedures effected the complained of deprivation because they were inadequate, as was the case in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (where state statute barred untimely employment benefits claim for any reason, including state's inadvertent failure to hold hearing in timely manner, state procedure itself was inadequate to protect claimant's property interest). Nor do the allegations of plaintiff's complaint suggest that despite a constitutionally valid scheme, the state somehow authorized defendants' conduct, as in *Zinermon v. Burch*, 110 S.Ct. 975.

In *Zinermon*, the Court determined that the State of Florida had authorized defendants' conduct because it had consciously delegated broad discretion to hospital staff members to make complex, unreviewable decisions regarding the capacity of mental health patients to give informed consent to their admission. This discretion, coming at an identifiable point in the statutory scheme, made it predictable that staff members could and would effect a deprivation of liberty by erroneously admitting an incompetent patient under standards for voluntary admission. In contrast, in this case, Wisconsin established comprehensive disciplinary procedures strictly limiting prison staff discretion. Although members of the prison adjustment committee have some discretion to decide matters of guilt and innocence, the state has not authorized prison staff to make decisions about *how* to implement the mechanical aspects of the hearing procedure that were the source of plaintiff's deprivations (*e.g.* supplying prior written notice and reasons for the hearing committee's decision). Consequently, the state could not predict defendants' disregard of such procedures.

In addition, in *Zinermon*, the Court held that under the circumstances the state *could* have provided for a mandatory predeprivation hearing on competence to lessen the likelihood of the type of deprivation that occurred. *See Katz v. Klehammer*,

902 F.2d 204, 207 n. 1 (2d Cir.1990) (citing *Zinermon*, 110 S.Ct. at 989–90). In this case, defendants violated aspects of a procedural scheme that included the holding of a hearing to prevent erroneous deprivations of liberty; under these circumstances, a "state rule directing persons in their position to hold a hearing before violating any rule … would be senseless." *See Katz*, 902 F.2d at 207 n. 1.

Last, the state cannot be said to have made a "conscious" decision to ignore plaintiff's constitutional rights on the theory that defendants may have possessed a certain degree of authority within the prison system. In *Easter House*, 910 F.2d 1387, the high rank within the governmental hierarchy of the director of the state agency's central region who allegedly took part in the conspiracy to deprive plaintiff of its property did not turn his random and unauthorized conduct into an established state procedure. *Id.* at 1400–02. Similarly, the acts of employee misconduct in this case clearly contravened established state policy codified in formal rules and regulations, and therefore were still "random and unauthorized" decisions from the state's perspective. *Id.* at 1402–03.

It may appear unusual to characterize as random and unauthorized thirty-one separate alleged violations of any established state procedure. However, defendants' acts were directed at one person over a short period of time, and were as unpredictable, undiscoverable and unauthorized by the state as the single deprivations in *Parratt*, 451 U.S. 527, 101 S.Ct. 1908, and *Hudson*, 468 U.S. 517, 104 S.Ct. 3194, or the single conspiracy in *Easter House*, 910 F.2d 1387. The fact that such continued violations are deplorable does not change the analysis. If defendants had committed the same rule violations with respect to many prisoners in varied contexts, and there were an indication that the state had an opportunity to learn of the continued violations but ignored them, the argument could be made that the state had permitted the initiation of new policy, rendering the acts neither random nor unauthorized. However, this is not such a case.

■ Because I have concluded that the defendants' acts were random and unauthorized, I must determine whether the state provided plaintiff with adequate postdeprivation remedies.

Plaintiff does not argue that his remedies under state law were inadequate. Plaintiff could and did file a complaint with the state Corrections Complaint Examiner, who reviewed plaintiff's records and found that substantial procedural irregularities in plaintiff's disciplinary hearings warranted remedy. The prison system administrator affirmed this finding, and ordered the prison authorities to expunge the deprivations of good time from plaintiff's record and provide him with new hearings. Thus, I conclude that plaintiff already utilized a meaningful postdeprivation remedy to correct his injuries.

■ Even if plaintiff had not utilized the inmate complaint review system, Wisconsin allows an inmate to challenge disciplinary hearing procedures through a writ of certiorari. *See State ex rel. Staples v. Department of Health and Social Services*, 115 Wis.2d 363, 340 N.W.2d 194 (1983); *State ex rel. Meeks v. Gagnon*, 95 Wis.2d 115, 289 N.W.2d 357 (Ct.App.1980). The scope of review on certiorari extends to whether the administrative action in question violated guarantees of due process found in both the federal and state constitutions. *Krison v. Nehls*, 767 F.2d 344 (7th Cir.1985). Certiorari review also encompasses assertions that a prison adjustment committee failed to follow its own rules governing the conduct of hearings. *State ex rel. Meeks*, 95 Wis.2d at 119, 289 N.W.2d 357.

■ Although plaintiff would not be able to recover damages through certiorari review, this does not render the method "inadequate" for purposes of *Parratt. See Easter House*, 910 F.2d at 1406 ("the fact that an injured party 'might not be able to recover ... the full amount which he might receive in a § 1983 action is not ... determinative of the adequacy of the state remedies' ") (citing *Hudson v. Palmer*, 468 U.S. at 535, 104 S.Ct. at 3204; *Parratt*, 451 U.S. at 544, 101 S.Ct. at 1917). It is also true that plaintiff can no longer pursue a writ of certiorari, because the six-month statute

of limitations has expired. *State ex rel. Enk v. Mentkowski*, 76 Wis.2d 565, 252 N.W.2d 28 (1977). However, the state provided plaintiff with the possibility of instituting such an action. Because the procedure was in existence at the time of plaintiff's loss, the state provided due process sufficient to protect his interests. *See Parratt*, 451 U.S. at 543–44, 101 S.Ct. at 1917; *Daniels v. Williams*, 720 F.2d 792, 798 (4th Cir.1983), *adhered to en banc*, 748 F.2d 229 (4th Cir.1984), *aff'd*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (due process not offended by affirmative defense of statute of limitations).

■ A state remedy is an inadequate alternative to relief under § 1983 only if it is "meaningless" or "nonexistent" and cannot conceivably be said to provide due process. *Easter House*, 910 F.2d at 1406. Neither the prison complaint review procedure nor certiorari relief can be said to be meaningless or nonexistent in this case. Because plaintiff's complaint alleges the occurrence of random and unauthorized acts for which there was an adequate postdeprivation remedy, the state provided plaintiff all the process he was due. Accordingly, I will grant defendants' motion to dismiss plaintiff's Fourteenth Amendment claim.

■ Plaintiff contends also that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. However, beyond asserting that he has suffered, plaintiff does not allege any specific facts that would support a finding that his confinement was of a type forbidden by the Eighth Amendment. The mere imposition of segregated status does not rise to the level of a constitutional violation. *Adams v. Pate*, 445 F.2d 105 (7th Cir.1971). Therefore, I will also grant defendants' motion to dismiss on this claim.

### ORDER

IT IS ORDERED that defendants' motion to dismiss is GRANTED in all respects.