Edward HARTWICK, Plaintiff,

v.

**BOARD OF TRUSTEES OF JOHNSON COUNTY COMMUNITY COLLEGE, Defendant.**

Civ. A. No. 89–2513–L.

United States District Court,
D. Kansas.

Jan. 31, 1992.

Richard D. Anderson, Topeka, Kan., for plaintiff.

Stanley N. Wilkins, Patricia A. Wohlford, Hal D. Meltzer, Turner & Boisseau, Chartered, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Before the court are the plaintiff's motion for partial summary judgment (Doc. # 53) and the defendant's motion for summary judgment (Doc. # 48). A hearing was held on December 23, 1991. Because the arguments for and against the respective motions are interrelated, they will be considered concurrently. For the reasons more fully set forth below, the court will deny the plaintiff's motion and grant the defendant's motion for summary judgment.

In this section 1983 action, one of the central questions the court must determine is whether a state actor's alleged failure to follow established state procedures violates a plaintiff's procedural due process rights when adequate state post-deprivation remedies are present to protect the plaintiff. In light of the Supreme Court's recent ruling in *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), and subsequent decisions from various courts in-terpreting it, the court holds that such facts do not state a claim for procedural due process violations. The other issues raised by the plaintiff are also resolved against him.

## I. FACTS [1]

Plaintiff Edward Hartwick was employed by the Johnson County Community College as an electronics instructor from August 16, 1982, until May 31, 1989. During this period, Mr. Hartwick signed yearly contracts for professional employment with the defendant Board of Trustees of Johnson County Community College (Board). On March 13, 1989, the Board voted to suspend Mr. Hartwick's employment for the duration of his contract and to nonrenew his contract for the 1989–90 academic year.

On March 15, 1989, Mr. Hartwick was mailed a certified letter from the president of the Board notifying Mr. Hartwick of the Board's actions. Because he was a tenured teacher, Mr. Hartwick was notified of his right to a due process hearing pursuant to K.S.A. § 72–5438 (Supp.1990).[2] Section 72–5438 mandates that teachers who are to be nonrenewed or terminated be given a written notice of the reasons for the proposed nonrenewal and a statement that the teacher is entitled to a due process hearing before a three member panel. In its March 15 letter, the Board explained to Mr. Hartwick that "[t]hese actions are the result of an investigation by the College administration which revealed that you have misappropriated College property."

Mr. Hartwick requested a due process hearing as provided by K.S.A. § 72–5438, which was held on May 9, 10, and 19, 1989. Prior to the hearing, the Board's attorneys

---

**1.** Although the case is here on cross motions, the following facts are presented in the light most favorable to the plaintiff, as is required in reviewing a motion for summary judgment against the nonmoving party, because the Court has concluded that even in that light the plaintiff's case does not survive these motions.

**2.** K.S.A. § 72–5438 provides that:
Whenever a teacher is given written notice of intention to not renew the teacher's contract

as provided in K.S.A. 72–5437, or whenever such teacher is terminated before the end of his or her contract term, the teacher shall be given a written notice of the proposed nonrenewal or termination including (1) a statement of the reasons for the proposed nonrenewal or termination, and (2) a statement that the teacher may have the matter heard by a hearing committee. . . .

submitted a Statement of the Board's Case to Mr. Hartwick and the hearing panel. This brief set forth the grounds for the Board's suspension and nonrenewal of Mr. Hartwick's contract. The parties stipulated that "the misappropriation of College property" was the issue to be resolved at the hearing. Throughout the due process hearing, Mr. Hartwick was represented by counsel, called witnesses on his behalf, and was allowed to introduce evidence for the hearing panel to consider.

The hearing panel voted two-to-one to sustain the Board's decision to nonrenew. The panel specifically found that "[t]here was no evidence that Mr. Hartwick used any of the equipment for his own personal benefit, profited or gained [sic] personally from having the equipment in his home." The panel majority described the issue before it as follows:

> The issue to be determined is whether or not in taking its action, the School Board acted with good cause, including any ground put forward by the School Board in good faith and which was not arbitrary, irrational, unreasonable, or irrelevant to the School Board's task of building up and maintaining an efficient school system.
>
> . . . .
>
> While recognizing that the Notice of the Board of its action used the word "misappropriation", which from a legal standpoint may have been a mischaracterization of Mr. Hartwick's acts, that is not the real question before the Due Process Hearing Committee. The real question is set out as stated above.

One panel member dissented, arguing that the Board had not met its burden of establishing that Mr. Hartwick had "misappropriated" College property under the legal definition of that term. The Board voted five-to-one to accept the majority decision of the hearing panel and nonrenew Mr. Hartwick's contract.

After learning of the Board's final decision, Mr. Hartwick filed an appeal with the District Court of Johnson County, Kansas, as allowed by K.S.A. § 72–5443(c) (1985). While that appeal was still pending, he filed this action in federal court under 42 U.S.C. § 1983, claiming that he was terminated from his employment without due process of law as required by the fourteenth amendment to the United States Constitution.

## II. SUMMARY JUDGMENT STANDARDS

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir. 1981). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. S.W. Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.,* 740 F.Supp. 1519, 1522–23 (D.Kan.1990).

## III. DISCUSSION

Mr. Hartwick claims that the Board violated his due process rights in four ways.[3] Initially, he claims that he was denied due

---

**3.** The defendant did not raise on these motions so the court does not decide whether or not the Board is a proper defendant as to some or all of the plaintiff's claims or whether any immunity defense applies. The plaintiff's claims are addressed here on their merits.

process because the Board's decision to nonrenew his contract was premised on reasons not set forth in the formal notice sent to him on March 15, 1989. Mr. Hartwick argues that, although the notice specified "misappropriation" as the basis for suspension and nonrenewal, the hearing panel majority decision (which was adopted by the Board) found that he did not technically "misappropriate" College property. Thus, Mr. Hartwick claims that he was not given sufficient notice of the reason for his nonrenewal.

Second, Mr. Hartwick argues that he was denied a fair and impartial fact finder as required by the fourteenth amendment. He asserts that the due process hearing panel that heard his case was biased against him. Two of the three panel members allegedly had professional relationships with Mr. Hartwick's chief accuser in the College administration. According to Mr. Hartwick, these members were biased against him, and it was because of this bias that they voted to nonrenew his contract. Additionally, Mr. Hartwick argues that the hearing panel failed to deliberate as he suggests is required by the fourteenth amendment. Mr. Hartwick contends that the panel member he designated was not included in discussions about this case that occurred among the other two members.

Third, Mr. Hartwick claims that he was denied due process because the Board did not warn him that failure to follow equipment check-out procedures could lead to his termination. One of the reasons specified in the hearing panel's decision to nonrenew was Mr. Hartwick's failure to follow these check-out procedures. Mr. Hartwick claims that the failure to warn him of the consequences of not complying with these procedures violated his substantive due process rights.

Finally, Mr. Hartwick claims that his due process rights were violated by a Kansas statute that requires the school board and

teacher to share the costs of the transcript of the due process hearing. He contends that K.S.A. § 72–5440 (Supp.1990) is unconstitutional on its face because it imposes an open-ended penalty on the exercise of a nonrenewed teacher's due process rights.

The first two arguments propounded by Mr. Hartwick implicate procedural due process issues. They will be discussed first. The remaining two arguments will be analyzed separately.

### A. Procedural Due Process Claims

■ Although the parties' briefs do not draw this important distinction, Mr. Hartwick's first two arguments are based on procedural, rather than substantive, due process principles. At oral argument on these motions counsel for the plaintiff contended that the Board's decision to nonrenew plaintiff's contract even though there allegedly was no technical "misappropriation" raised substantive due process issues in addition to the procedural issues. The court disagrees.[4]

Procedural due process claims are distinguishable from claimed violations of substantive constitutional rights. *Parratt v. Taylor,* 451 U.S. 527, 536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). When a violation of a substantive constitutional right is alleged, the relevant inquiry involves an assessment of the constitutionality of the action itself, regardless of the procedural protections available, because "there are certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process." *Id.* at 545, 101 S.Ct. at 1918 (Blackmun, J., concurring). When a substantive constitutional right is infringed, "the constitutional violation is complete at the moment when the harm occurs." *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500 (11th Cir.1985) (en banc), *cert. denied,*

---

4. A case decided by another court in this district illustrates this distinction. In *Bogart v. Unified School Dist. No. 298,* 432 F.Supp. 895 (D.Kan. 1977), the court held that a school board's decision not to renew a teacher's contract violated constitutional standards. However, the board's

action in *Bogart* involved statements made by the teacher about drug use. *Id.* at 899. Thus, first amendment substantive rights were implicated, distinguishing that case from the one before this court. *Id.* at 905.

476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

Procedural due process requires notice, a hearing, and a means of decision that does not offend the concept of fundamental fairness. To allege a substantive due process violation, in addition to claiming that the decision was arbitrary and irrational, the plaintiff must show either a separate constitutional violation or the inadequacy of state law remedies. *Jones v. Doria*, 767 F.Supp. 1432, 1436 (N.D.Ill.1991).

In this case, Mr. Hartwick has not challenged the sufficiency of the due process requirements of the Kansas Teacher Tenure Act, K.S.A. § 72–5410 *et seq.* Instead, Mr. Hartwick claims that the Board's failure to follow these established procedures violated his due process rights. This allegation raises a procedural, not substantive, due process claim. *Zinermon v. Burch*, 494 U.S. 113, 140–41, 110 S.Ct. 975, 990–91, 108 L.Ed.2d 100 (1990) (O'Connor, J., dissenting); *Jones*, 767 F.Supp. at 1438 (allegation by public employee that employer failed to comply with certain procedures before suspending him did not state claim for violation of substantive due process rights). The alleged constitutional violation was not complete when Mr. Hartwick was nonrenewed; it materialized only if and when the proper procedures were not followed to reach this ultimate result.

1. Constitutional Due Process Requirements

■ A plaintiff must meet a two-pronged test to establish a claim for violation of procedural due process rights. First, he must show that a protected property interest was taken, and second, he must show that the procedural safeguards surrounding the deprivation were inadequate. *Board of Regents v. Roth*, 408 U.S. 564, 568–69, 92 S.Ct. 2701, 2704–05, 33 L.Ed.2d 548 (1972). There is no serious dispute that Mr. Hartwick had a constitutionally protected property interest in his continued employment at the College. Under Kansas law, a tenured teacher such as Mr. Hartwick has a right to the renewal of his or her contract unless the school district can demonstrate good cause for nonrenewal. This right amounts to a property interest in continued employment. *Bogart v. Unified School District No. 298*, 432 F.Supp. 895, 903 (D.Kan.1977).

■ The relevant inquiry in this case is whether the procedural safeguards provided were adequate. Mr. Hartwick does not challenge the statutory due process protections provided for nonrenewed teachers. His claim is that these procedures were not followed by the Board. The adequacy of the process that is due, however, is not dependant on whether the Board violated state law; federal constitutional standards govern the procedure required under the due process clause. *Jones v. Doria*, 767 F.Supp. 1432, 1438 (N.D.Ill. 1991). "At the outset it should be noted, of course, that a mere showing of defendants' violations of state law and of their own procedures in denying … a hearing and notice would not of themselves equate to a violation of … federal due process rights." *Id.* (emphasis in original); *see also Duenas v. Nagle*, 765 F.Supp. 1393, 1397 (W.D.Wis. 1991).

The process required by the federal constitution was set forth in *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495. The notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Aacen v. San Juan County Sheriff's Dept.*, 944 F.2d 691, 697 (10th Cir.1991). It must permit adequate preparation for the impending hearing. *Id.* These minimum constitutional requirements were satisfied in the case at bar.

Mr. Hartwick does not deny that he received notice that his contract was being nonrenewed and that he was entitled to a hearing at which he could challenge this decision. He admits that he received a

prehearing brief summarizing the Board's allegations against him. He acknowledges that he was able to present all of the evidence to support his position that he desired at the hearing. Federal due process standards require no more. His complaints about the hearing are that the Board did not base its ultimate decision on the ground of "misappropriation," which was the reason given in the notice letter; the hearing panel was biased; and the hearing panel did not deliberate. However, decisions of the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), indicate that these allegations are insufficient to state a claim under 42 U.S.C. § 1983.

2. Due Process after *Parratt/Hudson*

The *Parratt/Hudson* doctrine provides that a random, unauthorized deprivation of a property or liberty interest does not violate due process if the state furnishes an adequate post-deprivation remedy. *Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (rehearing en banc). In *Parratt*, a prisoner brought a section 1983 lawsuit against state prison officials after they negligently lost his mail-ordered hobby kit. The prisoner alleged that this deprived him of property without due process of law. The Supreme Court rejected this claim and held that a predeprivation hearing is not always required. *Parratt*, 451 U.S. at 540, 101 S.Ct. at 1915. The Court noted that the state had provided predeprivation procedures that would have protected the plaintiff's property interest, but the prison officials failed to follow these procedures. The Court held that situations involving a loss of property caused by random and unauthorized acts of state officials in contravention of established state procedures cannot be predicted. *Id.* at 541, 101 S.Ct. at 1916. Therefore, the Court concluded that negligent deprivations which occur without a prior hearing do not violate the fourteenth amendment's due process clause as long as the state provides a "meaningful post-deprivation remedy." *Id.* at 544, 101 S.Ct. at 1917.

The Court reinforced this holding in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). *Logan* held, however, that the *Parratt* rationale applies only when the injury is caused by a failure to follow established and adequate state procedures. It does not apply when the state procedures themselves destroy rights.

In *Hudson*, the Court extended *Parratt* to cover the random and unauthorized "intentional conduct" of state employees. This case also involved a section 1983 suit by a prison inmate against prison officials. During a shakedown of the inmate's cell, a prison guard intentionally destroyed some of the inmate's personal items. The Court found that the guard's intentional conduct fell within the ambit of the *Parratt* doctrine, reasoning that "a state can no more anticipate and control in advance the random and unauthorized conduct of its employees than it can anticipate similar negligent conduct." *Hudson*, 468 U.S. at 533, 104 S.Ct. at 3203.

The *Parratt/Hudson* doctrine was modified in *Zinermon*. In that case, the plaintiff alleged that staff members at a Florida mental hospital deprived him of his liberty without due process by admitting him to the hospital under a "voluntary" statutory procedure when they knew or should have known that he was incompetent to sign the admissions forms as required by this procedure. The trial court granted the defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6), but the Supreme Court reversed. The Court held that the factual circumstances present in that case did not fall within the category of cases in which *Parratt/Hudson* would preclude section 1983 liability. *Zinermon*, 494 U.S. at 136, 110 S.Ct. at 989. The Court did not, however, abandon the principles established by those cases. The Court focused on the foreseeable nature of the deprivation at issue and held that it was not "random and unauthorized," as those terms had previously been construed. *Id.* at 136–39, 110 S.Ct. at 989–90.

The principal rule of *Zinermon* is that a plaintiff generally need not exhaust his administrative remedies before commencing an action under section 1983. *Simmons v. Chemung County Dept. of Social Servs.,* 770 F.Supp. 795, 799 (W.D.N.Y.), *aff'd,* 948 F.2d 1276 (2d Cir.1991). An exception exists, however, when the plaintiff alleges claims based on procedural due process.[5] *Id.* To these claims the existence of a state remedy is relevant because the constitutional violation actionable under section 1983 does not occur until and unless the state fails to provide due process. *Id.* " '[W]hether ... the *Parratt* rule necessarily precludes § 1983 liability ... [depends on] whether [the State could implement] predeprivation procedural safeguards ... to address the risk of deprivations of the kind' the plaintiff alleges." *Id.* at 799–800 (quoting *Zinermon,* 494 U.S. at 132–33, 110 S.Ct. at 986–87). Factors that bear on this determination are:

> (1) the extent to which the State can foresee the risk, ... (2) the degree to which it can reduce that risk through additional predeprivation process or by limiting the defendants [sic] discretion in implementing already established procedures, ... and (3) the degree to which the defendants have the power and authority to implement the procedural safeguards required before the deprivation may occur....

*Id.* at 800; *accord Caine v. Hardy,* 943 F.2d 1406, 1413 (5th Cir.1991) (rehearing en banc); *Easter House v. Felder,* 910 F.2d 1387, 1402 (7th Cir.1990) (rehearing en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991).

Courts interpreting and applying the *Parratt/Hudson* doctrine recently have limited *Zinermon* to its facts. *See, e.g., Katz v. Klehammer,* 902 F.2d 204, 207 n. 1 (2d Cir.1990); *Easter House,* 910 F.2d at 1397. In appropriate circumstances, the *Parratt* doctrine precludes section 1983 liability when adequate post-deprivation remedies are available. "In its most fundamental form, we believe that *Zinermon* holds only that predictable deprivations of liberty or property which flow from authorized conduct are compensable under § 1983." *Easter House,* 910 F.2d at 1402.

### 3. Application of *Parratt/Hudson* after *Zinermon*

Under the *Parratt/Hudson* doctrine as modified by *Zinermon,* the court must first ask whether the deprivation alleged by Mr. Hartwick was truly unpredictable or unforeseeable. *See Zinermon,* 494 U.S. at 136, 110 S.Ct. at 989. Mr. Hartwick complains that his rights were violated because the Board, which is considered a state actor, failed to follow state procedures in his nonrenewal hearing by not notifying him of the "true" reason that he was being nonrenewed, by allowing a biased hearing panel to judge his case and by not having deliberation. It is difficult to imagine how the State could any more predict that its agent would disregard established statutory procedures required when tenured teachers are nonrenewed than it could that a prison guard might destroy an inmate's personal belongings, for example. Thus, the deprivation Mr. Hartwick alleges was unforeseeable in this sense.

The Fifth Circuit reached a similar conclusion on this issue in *Caine v. Hardy,* 943 F.2d 1406 (5th Cir.1991) (rehearing en banc).[6] In *Caine,* an anesthesiologist filed

---

**5.** It has been established since the Supreme Court's decision in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that exhaustion of state remedies is not a prerequisite to bring a section 1983 claim. The holding in *Monroe* is not disturbed by the *Parratt/Hudson* doctrine. *Monroe* is properly viewed as an interpretation of section 1983, while the *Parratt/Hudson* doctrine is a rule of substantive constitutional law based upon an interpretation of the due process clause itself. 1 M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 3.12, at 193 (1991).

**6.** Although the Tenth Circuit has not yet discussed the *Parratt/Hudson* doctrine in light of *Zinermon,* this court is guided by the recent decisions of other circuits in cases with analogous facts. The *Caine* decision of the Fifth Circuit is factually the most similar to the one at bar, but the Seventh Circuit's decision in *Easter House v. Felder,* 910 F.2d 1387 (7th Cir.1990) (rehearing en banc), and the decisions of the Second Circuit, are also analogous. As Judge Jones of the Fifth Circuit summarized, "in our research, none of the courts as yet called upon to apply *Zinermon* has found a procedural due

a section 1983 suit against the doctors and hospital that suspended his privilege to work at the hospital for alleged malpractice. The plaintiff claimed that the defendants failed to give him proper notice of the charges against him as required by hospital procedures, and that the decisionmakers were biased against him. Like Mr. Hartwick, the anesthesiologist did not challenge the adequacy of the hospital procedures themselves. The court, sitting en banc, held that these allegations did not state a cause of action for violation of due process under section 1983, relying on *Parratt/Hudson*. *Id.* at 1415. Moreover, the court found that the risk of a deprivation caused by officials who violate established policies was unforeseeable. *Id.* at 1413–14.

The second inquiry under the modified *Parratt/Hudson* doctrine is whether additional predeprivation procedures would have decreased the risk of an alleged erroneous deprivation. *See Zinermon*, 494 U.S. at 136–38, 110 S.Ct. at 989–90. Again, it is difficult to imagine what additional predeprivation procedures could have been provided to prevent the Board from violating the statutory predeprivation procedures. *See Caine*, 943 F.2d at 1414. A state rule directing the Board "to hold a hearing before violating any rule or regulation would be senseless." *Katz v. Klehammer*, 902 F.2d 204, 207 n. 1 (2d Cir.1990).

Finally, the court must determine whether the Board's conduct in allegedly violating established statutory procedures was somehow "authorized." *See Zinermon*, 494 U.S. at 138, 110 S.Ct. at 990. *Zinermon* held that some actions of officials to whom the authority to deprive property has been delegated amount to "authorized" acts, and thus not "random and unauthorized," so that *Parratt* is inapplicable. In *Zinermon*, the Court emphasized that certain professionals at the mental hospital were the only ones who could ensure that the state procedure for admitting incompetent patients was followed. Therefore, because of their broadly delegated power, they were "authorized" to disregard the

procedure when they felt patients were competent to commit themselves voluntarily. *Id.*

Unlike the state mental hospital personnel in *Zinermon*, who were delegated the choice of whether or not to initiate the precommitment hearings (and consequently, the authority to deprive patients of their liberty without following the state procedure for involuntary commitments), the Board in Mr. Hartwick's case was given no choice to make. If Mr. Hartwick requested a predeprivation due process hearing, the State mandated that the Board provide it. Moreover, K.S.A. § 72–5438 specifically protects against abuse of the due process hearing by state actors. The nonrenewed teacher is entitled to name one of the three members of the hearing panel and to have an equal voice with the board of education in determining a second member. This provision is designed to eliminate the possibility that the hearing panel will be biased against the teacher. Therefore, it cannot be said that the State "authorized" its agents to disregard its established procedure in the instant case. *See Easter House v. Felder*, 910 F.2d 1387, 1402 (7th Cir. 1990) (rehearing en banc), *cert. denied*, ── U.S. ──, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991); *Caine*, 943 F.2d at 1414 (presence of safeguards in hospital guidelines to prevent biased doctors from serving on review panel meant that defendants were not authorized to misuse the guidelines).

Because the distinctions that kept the Supreme Court from applying the *Parratt/Hudson* doctrine in *Zinermon* are not present in this case, that doctrine governs Mr. Hartwick's case. Mr. Hartwick does not state a section 1983 claim for violation of procedural due process if the state's post-deprivation remedies are adequate. The court next considers these post-deprivation remedies.

■ The Kansas Teacher Tenure Act allows nonrenewed teachers to appeal the decision of the due process hearing panel to a state district court. K.S.A. § 72–5443(c) (1985). Mr. Hartwick filed such an appeal,

process violation in claims of particular regulatory abuses carried out within the framework of

controlling regulations." *Caine*, 943 F.2d at 1415.

but initiated this action in federal court before the state court could reach a decision. Based on the information provided to the court at the hearing, the state action apparently is stayed pending the resolution of this federal court action. The existence of this state judicial review mechanism constitutes an adequate post-deprivation remedy for random and unauthorized violations of the Teacher Tenure Act. *See, e.g., Caine,* 943 F.2d at 1414 n. 6 (presence of judicial review of hospital decision as final appeal constituted adequate post-deprivation remedy for random violations of hospital regulations); *Simmons v. Chemung County Dept. of Social Servs.,* 770 F.Supp. 795, 800 (W.D.N.Y.1991) (state law remedies, including state administrative review, constituted adequate post-deprivation remedies). A state post-deprivation remedy is inadequate only if it is meaningless or non-existent and cannot conceivably be said to provide due process. *Duenas v. Nagle,* 765 F.Supp. 1393, 1400 (W.D.Wis.1991). That is not the case here.

In addition to the state judicial review process, Mr. Hartwick could have filed a state law breach of contract action against the Board for improper termination. *See Speece v. Unified School Dist. No. 420,* 6 Kan.App.2d 71, 626 P.2d 1202 (1981) (teacher entitled to pursue nonrenewal claim via ordinary breach of contract action); *see also Saffold v. City of Chicago,* 775 F.Supp. 1126, 1129 n. 2 (N.D.Ill.1991) (state breach of contract action is appropriate remedy). Thus, at a minimum, two meaningful state remedies were available to Mr. Hartwick after the Board decided not to renew his contract.[7] Therefore, because the Board's alleged action in failing to follow the strictures of the Kansas Teacher Tenure Act was random and unauthorized, and because there are adequate post-deprivation remedies for this alleged action, Mr. Hartwick's fourteenth amendment procedural due process rights were not violated,

and he cannot state a claim under section 1983.

Important considerations of federalism support this conclusion. The *Parratt/Hudson* doctrine's application in section 1983 actions was meant to prevent the fourteenth amendment from becoming a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). This doctrine establishes a substantive limitation on the type of claims that may properly be brought before a federal court, saving for state courts those claims that are redressable by state remedies.

> Section 1983 must be preserved to remedy only those deprivations which actually occur without adequate due process of law, such as those which result from ·a *state's* conscious decision to ignore the protections guaranteed by the Constitution. It should not be employed to remedy deprivations which occur at the hands of a state employee who is acting in direct contravention of the state's established policies and procedures which have been designed to guarantee the very protections which the *employee* now has chosen to ignore. Such a limitation upon § 1983 maintains the delicate balance between the state and federal judicial systems, leaving the former to remedy individual torts and the latter to address property deprivations which occur without adequate due process protection. (emphasis in original).

*Easter House v. Felder,* 910 F.2d 1387, 1404–05 (7th Cir.1990) (rehearing en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991). Therefore, the Board's motion for summary judgment on Mr. Hartwick's procedural due process claims will be granted.

### B. Substantive Due Process Claim

■ Mr. Hartwick also claims that the substantive aspects of his fourteenth

---

7. Moreover, the Supreme Court has noted that the adequacy of the state law remedy is not determined by the plaintiff's ability to recover the same amount as he or she could under section 1983. *Easter House v. Felder,* 910 F.2d

1387, 1406 (7th Cir.1990) (rehearing en banc) (citing *Hudson,* 468 U.S. at 535, 104 S.Ct. at 3204). Thus, "adequacy" does not require "equivalence" to satisfy this analysis.

amendment right to life, liberty, and property were infringed. He does not contend that "the interest entitled to protection as a matter of substantive due process was anything resembling 'the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life.'" *Harrah Indep. School Dist. v. Martin,* 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979) (quoting *Kelley v. Johnson,* 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976)). Rather, Mr. Hartwick claims that his rights were violated because he did not have notice that failure to follow the College's property check-out procedures could result in his termination. Mr. Hartwick does not deny that he took several items of College property to his home without filling out a check-out form. He contends, however, that the check-out policy was ill-defined and vague, and that he was unaware that he needed to complete check-out forms for this property.

The due process clause of the fourteenth amendment requires that fair warning of prohibited conduct be given to individuals so that they may avoid that which is forbidden. *Rose v. Locke,* 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975). Individuals are "entitled to be informed with reasonable certainty and explicitness of the standards by which" they will be judged. *Roach v. National Transportation Safety Board,* 804 F.2d 1147, 1155 (10th Cir.1986), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 195 (1988). The uncontroverted facts in the record for the purposes of this motion established that he did have such fair warning.

Mr. Hartwick's contract with the Johnson County Community College provided that:

> The employee agrees to perform such duties, teaching service, committee work and other duties as may be required by the officers of the College from time to time, and *to follow the rules and regula-*

*tions heretofore prescribed or adopted by the College.* (emphasis added).

The contract also provided that the College could terminate the contract if Mr. Hartwick was "in violation of any of the terms and conditions of [his] ... employment as set forth in the policies, rules and regulations" of the College. Thus, Mr. Hartwick knew or at least had fair warning that failing to follow College rules and regulations could lead to his termination.

Mr. Hartwick concededly was aware that College employees were required to check out "certain" equipment when it was taken off College property. He believed that the check-out procedures applied only to "capital equipment," that is, equipment valued at over $200. (Plaintiff's Response to Defendant's Motion for Summary Judgment, Response to Statement of Fact No. 55). Yet, it is uncontroverted that Mr. Hartwick took property valued at over $200 to his home without filling out a check-out form. (*See, e.g.,* Defendant's Motion for Summary Judgment, Uncontroverted Statement of Fact No. 64). The extent of Mr. Hartwick's misapprehension, if any, of the full scope of the checkout procedure does not create an issue of "material" fact which would preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (only material factual disputes preclude summary judgment). Mr. Hartwick should have known, at least, that failing to follow the checkout rules for the "capital equipment", which violated College regulations of which he was aware, could lead to his termination. Thus, Mr. Hartwick's substantive due process rights were not violated, and the Board is entitled to summary judgment on this claim.

### C. Constitutionality of the Cost–Sharing Statute [8]

■ Mr. Hartwick also contends that his due process rights were violated because

---

8. After oral argument on the motions in this case the Attorney General's office of the State of Kansas submitted a copy of a brief it filed in another case in federal court in which the constitutionality of K.S.A. § 72–5440 is being challenged. Defendant subsequently attempted to adopt this brief into its motion for summary judgment. Because it was submitted without prior consultation with this court after all of the pleadings on these motions had been filed, the State's brief was not considered by the court.

part of the Kansas Teacher Tenure Act which allocates the costs of the due process hearing is facially unconstitutional. He claims that K.S.A. § 72–5440,[9] which requires the nonrenewed teacher to pay half the cost of a transcript of the due process hearing, imposes a substantial and open-ended burden on his right to due process. Mr. Hartwick cites the recent Tenth Circuit decision in *Rankin v. Independent School Dist. No. I–3,* 876 F.2d 838 (10th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991), as controlling on this question. The Board counters that Mr. Hartwick has no standing to challenge K.S.A. § 72–5440 because that statute was never enforced against him.

■ To satisfy the Article III "case or controversy" requirement, plaintiffs must allege that they have " 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues.' " *Roberts v. Madigan,* 921 F.2d 1047, 1051 (10th Cir.1990) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). Modern standing doctrine requires plaintiffs to satisfy both constitutional standards under Article III, § 2 of the Constitution and judicially crafted prudential standards.[10] To have standing under Article III to challenge the constitutionality of a statute, the plaintiff must allege that he suffered a personal injury fairly traceable to the allegedly unconstitutional statute, and that the injury is likely to be redressed by the relief requested. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *accord Roberts,* 921 F.2d at 1051.

Although the *Rankin* decision found unconstitutional an Oklahoma statute that is remarkably similar to K.S.A. § 72–5440, Mr. Hartwick's reliance on this case on the standing issue is misplaced. The Tenth Circuit panel did not even discuss standing in *Rankin,* most likely because the issue was clear in that case. The plaintiff in *Rankin* opted not to pursue a due process hearing under the Oklahoma teacher tenure act, allegedly because he could not afford to pay his share of the cost of the hearing. Thus, he was injured by the Oklahoma cost sharing statute because his right to a due process hearing was impaired. In contrast, Mr. Hartwick did proceed under the Kansas statute and he did receive his due process hearing. Moreover, Mr. Hartwick was not forced to pay his share of the cost of the proceeding. Therefore, while the plaintiff in *Rankin* suffered a cognizable injury to his due process rights, Mr. Hartwick has suffered no such injury.

Mr. Hartwick has not satisfied his summary judgment burden on this issue. After the Board made a factual showing that he was not injured by the statute, the burden shifted to Mr. Hartwick to make a contrary showing. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Yet, Mr. Hartwick has not come forward with any allegations of injury sufficient to give him standing to challenge K.S.A. § 72–5440. Mr. Hartwick concedes that he did not pay any costs associated with the due process hearing transcript. The Kansas National Education Association paid one half of these costs, and the Board paid the other half. It is also uncontroverted that the

---

9. K.S.A. § 72–5440 (Supp.1990) allocates the costs of the due process hearing. The fees and mileage for the attendance of witnesses are to be borne by the party calling the witness and the fees paid to the due process hearing panel members are borne equally by the parties. Subsection (c) allows either party to request that the testimony at the hearing be taken by a *court reporter* and either party may request a copy of the transcript. The principal constitutional challenge seems to be directed at subsection (d), which provides that "[a]ll costs of a hearing which are not specifically allocated in this section shall be borne equally by the parties." K.S.A. § 72–5440(d) (Supp.1990).

10. Prudential standing rules include the general prohibition on jus tertii standing, the rule barring adjudication of disputes more appropriately addressed in the representative branches, and the requirement that a plaintiff fall within the zone of interests protected by a challenged statute. *Ford ex rel. Ford v. Sully,* 773 F.Supp. 1457, 1460 n. 9 (D.Kan.1991). Because the constitutional standing requirements are not met in this case, the court need not address whether the prudential requirements are satisfied.

Board never sought to enforce K.S.A. § 72–5440 against Mr. Hartwick. (Defendant's Memorandum in Support of Summary Judgment, Uncontroverted Statement of Fact Nos. 36–37). Mr. Hartwick admits that all witnesses with knowledge bearing on his nonrenewal testified at the hearing, and he acknowledges that he would have testified the same regardless of who paid for the transcript. (Defendant's Memorandum in Support of Summary Judgment, Uncontroverted Statement of Fact Nos. 39, 41).

 Mr. Hartwick contends that his due process rights were "chilled" by the challenged statute. This argument is meritless. By his own admission, Mr. Hartwick received a due process hearing unfettered by concerns over who would pay for the transcript. Mr. Hartwick cites *Meese v. Keene*, 481 U.S. 465, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987), for the proposition that the personal injury element of the Article III standing requirement may be satisfied by proof that constitutional rights were chilled. In that case, however, the Supreme Court noted that "[i]f Keene had merely alleged that the appellation deterred him by exercising a chilling effect on the exercise of his First Amendment rights, he would not have standing to seek its invalidation." *Meese*, 481 U.S. at 473, 107 S.Ct. at 1867. Thus, a conclusory allegation of a chilling effect, unaccompanied by proof of a separate palpable injury, is insufficient to afford standing. *See Riggs v. City of Albuquerque*, 916 F.2d 582, 585 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991). Mr. Hartwick has not suffered the type of personal injury required to give him standing to challenge the cost sharing statute. *See, e.g., Barhold v. Rodriguez*, 863 F.2d 233, 234 (2d Cir.1988) (plaintiffs who had received their requested reassignments had no standing to challenge program that might interfere with reassignment wishes of others; they suffered no personal injury); *Johnson v. Stuart*, 702 F.2d 193, 194–95 (9th Cir.1983) (no injury to support standing when statute did not apply to plaintiffs); *Thomas v. Berrong*, No. 87–3371 (D.Kan. Aug. 18, 1989) (1989 WL

103420) (prisoner who was not affected by regulations had no standing). Summary judgment is therefore appropriate for the Board on this claim.

## IV. CONCLUSION

Mr. Hartwick's allegations do not support a claim for a violation of his procedural or substantive due process rights under the fourteenth amendment. These claims may more properly be asserted in the appeal to the state district court afforded by K.S.A. § 72–5438, in which Mr. Hartwick may challenge the nature of the procedures he received and the sufficiency of the evidence relied on by the hearing panel. In addition, he lacks standing to challenge the constitutionality of K.S.A. § 72–5440.

It is therefore ordered by the court that plaintiff's motion for partial summary judgment (Doc. # 53) is denied, and defendant's motion for summary judgment (Doc. # 48) is granted.

IT IS SO ORDERED.