902 F.2d 204
 Harry Theodore KATZ, and all others similarly situated,
Plaintiffs-Appellants,
v.
Robert KLEHAMMER, Ruth Lerner, New York City Department of
Housing Preservation and Development, Paul Crotty, Anthony
Gliedman, Abraham Biderman, Alfred Siegel, Edward Koch, City
of New York, Robert Seavey, Irwin Fingerit, Bernard Vogel,
Robert Oziel, Charles Skoller, Solomon Liss, Eric Schultz,
Seavey Fingerit Vogel Oziel & Skoller, Martin Marin, David
Stylman, Norman Prisand, Richard Montayne, Marin, Stylman,
Prisand & Montayne, Marvin Gold, Marvin Gold Management Co.,
Inc., Norman Levy, Sam Miller, all in individual and
official capacity, Defendants-Appellees.
 No. 516, Docket 89-7715.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 5, 1990.
Decided May 1, 1990.
 
 Harry Katz, pro se, for plaintiffs-appellants.
 Ronald E. Sternberg, Asst. Corp. Counsel, The City of New York, New York City, for defendants-appellees Edward Koch, Robert Klehammer, Ruth Lerner, Paul Crotty, Anthony Gliedman, Abraham Biderman, Alfred Siegel and the New York City Dept. of Housing Preservation and Development.
 Before KEARSE and WINTER, Circuit Judges, and LEVAL, District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 This appeal is from the dismissal of a complaint brought by Harry Katz pro se on behalf of himself and all other stockholders in a cooperative building subsidized by New York City and organized under the New York Private Housing Finance Law ("Housing Law"). Katz charges that the building's board of directors and the other defendants have mismanaged the building in violation of various state laws, regulations and bylaws, and that the city's failure to supervise the housing development implicates his federal constitutional rights. We affirm the dismissal of the complaint.
 
 BACKGROUND
 
 2
 Katz is a tenant-shareholder in Dayton Towers, a limited-profit housing development organized under the Housing Law and aided financially by the City of New York. Pursuant to the Housing Law, the New York City Department of Housing Preservation and Development has promulgated rules and regulations governing developments such as Dayton Towers.
 
 
 3
 Katz's complaint claimed, inter alia, that the defendants had been managing Dayton Towers in violation of state law, city regulations, and cooperative bylaws, and that defendant Klehammer, a New York City official, had threatened him with eviction for complaining about their activities. The complaint alleged that the mismanagement deprived Katz and his fellow stockholders of their property interests without due process, that the threatened eviction violated Katz's First Amendment rights, and that the defendants' refusal to allow Katz to see the financial records of the development violated "either a property or liberty interest." Katz asserts federal jurisdiction under 42 U.S.C. Secs. 1983 and 1985(3) (1982 & Supp. V 1987).
 
 
 4
 The defendants filed a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The defendants also asked that the pendent state law claims be dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Katz thereafter amended his complaint to allege that because other housing projects subject to the Housing Law were operated in conformity with state law, the failure to enforce the law with respect to Dayton Towers violated Katz's right to equal protection. Judge Platt granted both the Rule 12(b)(6) motion and the Rule 12(b)(1) motion. Katz appeals.
 
 DISCUSSION
 
 5
 We apply the familiar standard of review that all allegations in the complaint are viewed in the light most favorable to Katz. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).
 
 
 6
 We address first the Section 1983 claim. In order to state a cognizable claim under Section 1983, Katz must allege conduct under color of state law that deprived him of rights secured by the Constitution or laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Katz's complaint alleges that the defendants, in "allowing the board to run Dayton in flagrant violation of state law, and allowing and helping defendants Miller and Levy to divert corporate funds through illegal sweetheart deals, ... are unconstitutionally depriving the plaintiff class of stockholders of their property interests without due process." We assume arguendo that the City's involvement is sufficient to constitute state action for purposes of Section 1983. We further assume, without deciding, that Katz has alleged the deprivation of a recognized property interest. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). See also Lopez v. Henry Phipps Plaza South, Inc., 498 F.2d 937 (2d Cir.1974) (Friendly, J.) (tenant in a nonprofit housing development had an expectation in the renewal of her lease and nonrenewal without a hearing amounted to a deprivation of due process); but cf. Grace Towers Tenants Ass'n v. Grace Housing Development Fund Co., Inc., 538 F.2d 491 (2d Cir.1976) (absent explicit legislative indication or practice giving rise to a legitimate expectation, tenants of federally subsidized housing have no property interest in existing rent levels).
 
 
 7
 Even with these assumptions, however, Katz's complaint still fails to assert a valid Section 1983 claim. The mismanagement alleged is explicitly stated to be in violation of state law and is not the "result of some established state procedure." Parratt, 451 U.S. at 543, 101 S.Ct. at 1917. The complaint alleges merely that the defendants have caused random and unauthorized deprivations of Katz's property interests. Such allegations are insufficient to state a Section 1983 claim unless there is no adequate state remedy for the random, unauthorized deprivation. See id. at 543-44, 101 S.Ct. at 1916-17.
 
 
 8
 New York, however, provides an adequate remedy for Katz's claim. He may bring an Article 78 proceeding, N.Y.Civ.Prac.L. & R. 7801 (McKinney 1981), to enforce state law where "the body or officer failed to perform a duty enjoined upon it by law," or where "the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction." N.Y.Civ.Prac.L. & R. 7803. To the extent that the Housing Law and state and city regulations compel the supervising and other city officials to perform certain acts, Article 78 may thus serve to enforce such requirements when officials fail to fulfill these obligations. See Davis v. Starr, 88 Misc.2d 210, 387 N.Y.S.2d 351 (App.Div.1976); cf. Liotta v. Rent Guidelines Bd. for the City of New York, 547 F.Supp. 800 (S.D.N.Y.1982) (Article 78 provides for review of specific administrative actions). Moreover, to the extent that Katz's claim sounds in tort or breach of contract, he may bring a common-law cause of action in state court to enforce his rights. Because state law provides a remedy, Katz's Section 1983 claim fails.
 
 
 9
 Katz also asserts that the defendants' refusal to allow him access to the financial records of the development in violation of Private Finance Housing Law Sec. 32-a4 deprived him of "either a property or liberty interest." Again, however, Katz does not allege that this refusal was the result of anything other than a random, unauthorized act, and the existence of a state remedy in Article 78, see Altschul v. Butterfield Farms, Inc., 40 A.D.2d 654, 336 N.Y.S.2d 618 (1972), satisfies the requirements of due process. See Parratt, 451 U.S. at 544, 101 S.Ct. at 1917.[1]
 
 
 10
 Katz's complaint also asserts that the threatened eviction in response to his complaints violated his First Amendment rights. Katz's complaint does not allege, however, that Klehammer has the power to evict him or that he, Katz, has been chilled in exercising his rights. When and if eviction proceedings begin, his First Amendment claim can be addressed.
 
 
 11
 The amendment to Katz's complaint contains an equal protection claim based on the inferior management and supervision at Dayton Towers as compared with the management and supervision at other, allegedly better-run developments. This conclusory assertion fails to allege an equal protection violation. Instead, it merely relabels the claims Katz's original complaint had asserted as due process claims. Thus, because Katz has been deprived of equal protection only to the extent that he was deprived of property without due process, the district court properly dismissed the equal protection claim as well. See Chiplin Enters. v. City of Lebanon, 712 F.2d 1524, 1528 (1st Cir.1983). Moreover, his claims nowhere suggest that he was singled out for any discriminatory purpose.
 
 
 12
 We turn finally to Katz's claim for relief under Section 1985(3). To sustain that claim, Katz must allege a conspiracy to deprive him of equal protection or of equal privileges and immunities, some overt act in furtherance of the conspiracy, and an injury or a deprivation of a right or privilege. See Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971); cf. Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-91 (2d Cir.1988) (discussing Supreme Court and Second Circuit precedents and declining to reach the issue whether Section 1985(3) provides a remedy for private conspiracies to violate state law). We need not decide whether the protection afforded by Section 1985(3) extends to claimed conspiracies to violate a plaintiff's state-law rights, because Section 1985(3) clearly requires that a plaintiff show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin, 403 U.S. at 102, 91 S.Ct. at 1798; see also United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 834-35, 103 S.Ct. 3352, 3359-60, 77 L.Ed.2d 1049 (1983) (reaffirming this conclusion). Indeed, the Supreme Court in Scott strictly construed this requirement of Section 1985(3):
 
 
 13
 Although we have examined with some care the legislative history that has been marshaled in support of the position that Congress meant to forbid wholly nonracial, but politically motivated conspiracies, we find difficult the question whether Sec. 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means....
 
 
 14
 [W]e find no convincing support in the legislative history for the proposition that [Section 1985(3) ] was intended to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities.
 
 
 15
 463 U.S. at 836, 837, 103 S.Ct. at 3360, 3361 (emphasis in original).
 
 
 16
 Katz's complaint is completely devoid of any claim of class-based animus, whether economic, political, or otherwise. Moreover, he has failed to allege any facts, or even conclusory assertions, that would support a finding of class-based animus of the political or racial sort. Accordingly, this claim was properly dismissed as frivolous.
 
 
 17
 Because the federal-law claims were properly dismissed, the pendent state-law claims were also subject to discretionary dismissal pursuant to Rule 12(b)(1). See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).
 
 
 18
 Affirmed.
 
 
 
 *
 The Honorable Pierre N. Leval, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 We do not read the Supreme Court's recent decision in Zinermon v. Burch, --- U.S. ----, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), to affect our conclusion. Zinermon involved the deprivation of a liberty interest when a mental institution had confined the plaintiff, who had signed a voluntary admission form, without determining whether or not he was competent to consent to confinement. The Court held that the nature of the deprivation was such that the State could have provided for a mandatory pre-deprivation hearing on competence. See id. at 989-90. Unlike Zinermon, such processes are not feasible in the instant case. The defendants here are alleged to have violated various laws and regulations concerning public housing, and a State rule directing persons in their position to hold a hearing before violating any rule or regulation would be senseless