**Viola M. ROACH, Plaintiff,**

v.

**CITY OF NEW YORK, the Human Resources Administration of the City of New York, and Mrs. P. Rosen, Director of the Center of the Human Resources Administration of the City of New York known as Rockaway Center # 79, Defendants.**

**No. 88 Civ. 5234 (RPP).**

United States District Court, S.D. New York.

Jan. 24, 1992.

Viola Roach, pro se.

Peter L. Zimroth, Corp. Counsel of City of New York, New York City by Alan M. Schlesinger, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action commenced on September 9, 1988 by Plaintiff pro se, seeking relief under 42 U.S.C. §§ 1981 and 1983. Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff cross-moves for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, Defendants' motion is granted as to Defendants City of New York and Human Resources Administration of the City of New York and denied as to Defendant Rosen. Plaintiff's cross-motion will not be decided until further papers are submitted.

## BACKGROUND

The facts as alleged in the complaint are as follows. On January 24, 1977, Plaintiff was appointed to the position of Clerk[1] in the New York City Human Resources Administration ("HRA"), at the Wyckoff Center in Brooklyn. Plaintiff performed basic office tasks, such as filing case records and answering phones; her satisfactory performance was reflected in the evaluations she received during the course of her employment and in her eventual appointment to permanent civil service status. On January 8, 1985, Plaintiff was reassigned from the Wyckoff Center to Rockaway Center # 79 in Queens. Plaintiff continued to perform her assigned duties satisfactorily.

On or about February 13, 1986, Defendant Rosen, Director of Rockaway Center # 79, acting with others, ordered Plaintiff to see a Dr. Gorham, threatening to bring disciplinary action against Plaintiff should she fail to do so. Because of these threats, Plaintiff visited Dr. Gorham. Dr. Gorham, a psychiatrist, examined Plaintiff both on February 14, 1986 and on February 21, 1986, giving Plaintiff certain tasks to perform and asking her questions. Dr. Gorham made medical findings and recommendations. On February 24, 1986, Plaintiff returned to work at Rockaway Center # 79, continuing to perform her regular duties. On February 26, 1986, Plaintiff was called into Defendant Rosen's office and was told that, at the direction of Dr. Gorham, she was to leave work and not to return.

---

1. The title of "Clerk" was reclassified as "Office Aide I" during the course of Plaintiff's employment, on November 29, 1978.

Plaintiff left, but she returned on February 27, 1986 to secure from Defendant Rosen in writing the substance of Plaintiff's February 26 conversation with Defendant Rosen. Defendant Rosen referred Plaintiff to another supervisor, Serena Gaynor. On February 28, 1988, Ms. Gaynor told Plaintiff to follow the directives of Defendant Rosen and not to return to work. From March 3, 1986 on, Plaintiff did not return to Rockaway Center # 79.

Approximately one month later, during the first week of April 1986, Plaintiff went to the HRA Office of Personnel Services at 271 Church Street, New York, New York 10007 to seek assignment to another center. At that time, Plaintiff learned that sometime after March 3, 1986, pursuant to Dr. Gorham's recommendation, she had been placed on medical leave of absence by Defendants, acting through Jacqueline Byrd. Plaintiff did not want to be placed on medical leave. At no time was Plaintiff served with the following, as required under New York law: (1) a written statement of the facts relied upon by Defendants for the judgment that Plaintiff was not mentally fit to perform her duties; (2) notice of the fact that she might be placed on medical leave; (3) after Dr. Gorham's determination, written notice of the reasons for her placement on medical leave, the proposed date on which such leave was to commence, and a notification of Plaintiff's rights under the procedure by which she was to be placed on medical leave. *See* N.Y.Civ.Serv.Law § 72 (McKinney 1983 & 1991 Supp.). Service of the written notice would have triggered a ten-day period, during which Plaintiff could have objected to the imposition of the proposed leave of absence and requested a predisposition hearing. Had she so objected, the imposition of medical leave would have been held in abeyance until a final determination could be made. *See id.*

On July 7, 1986, Plaintiff made a request pursuant to the New York State Freedom of Information Act for a copy of Dr. Gorham's medical findings and recommendations. On July 20, 1986, Defendants gave Plaintiff copies of two memoranda written by Dr. Gorham and addressed to Serena Gaynor, dated February 14, 1986 and February 21, 1986. The memoranda listed the medical findings and recommendations made by Dr. Gorham upon his examination of Plaintiff and stated in part: "Mrs. Roach clearly has deficits in memory and cognition which will seriously interfere with job performance"; "I recommend neurological consultation with special attention to cognition and memory"; and "I continue to recommend medical leave with a neurological work up." On January 28, 1987, Plaintiff asked Defendants to allow Plaintiff come back to work. On June 5, 1987, Defendants terminated Plaintiff's employment with HRA.[2] Plaintiff alleges that she "lost her rights to contest Defendants actions placing her on an involuntary medical leave of absence" and that she "also lost salary and benefits." Complaint ¶¶ 58, 59.

## DISCUSSION

### 1. Defendants' Motion to Dismiss

A complaint should not be dismissed under Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). Moreover, a pro se complaint is held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Applying these standards, this

---

**2.** New York Civil Service Law § 73 provides: "When an employee has been continuously absent from and unable to perform the duties of his position for one year or more by reason of a disability ... his employment status may be terminated and his position may be filled by a permanent appointment."

Court finds that the complaint states a cause of action only against Defendant Rosen for a violation of Plaintiff's rights to procedural due process.[3]

■ Plaintiff's procedural due process claims against the City of New York and HRA come under the doctrine set forth by the Supreme Court in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, the Court held that a local government is subject to suit under § 1983 only "when execution of the government's *policy or custom* ... inflicts the injury." *Id.* at 694, 98 S.Ct. at 2037 (emphasis added). Plaintiff does not allege that a municipal policy, practice, or custom caused the violation of her rights. In fact, the crux of her complaint is that policy was not followed in her case. Accordingly, Plaintiff's procedural due process claims against the City of New York and HRA are dismissed.[4]

■ Plaintiff also claims a violation of procedural due process by Defendant Rosen on the grounds that Rosen did not follow the procedures in section 72 of the New York Civil Service Law. Defendants base their argument for dismissal of Plaintiff's procedural due process claim on the premise that Defendants' actions in this case were random and unauthorized. They argue that it is impossible for the State to have provided a predeprivation hearing, since it could not predict when such a violation of section 72 would occur. Defendants rely heavily on *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir.1988), in which the court found that an evidentiary error by the Ad-

ministrative Law Judge in a predeprivation hearing that allegedly resulted in the loss of the plaintiff's job was a random and unauthorized action for which postdeprivation procedures were adequate.

Plaintiff relies on decisions of the United States Supreme Court in *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (no predeprivation hearing provided to plaintiff although procedure appropriate for a person of plaintiff's alleged incompetence existed), and the Second Circuit in *Patterson v. Coughlin*, 761 F.2d 886 (2d Cir.1985) (predeprivation procedure existed under Department of Correctional Services regulations but those regulations were not followed), *cert. denied*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1968), both of which found that the plaintiffs had stated claims for procedural due process violations.

In this case, Plaintiff does not contest the adequacy of the procedures provided by New York Civil Service Law section 72 but rather claims that the existing procedures were not followed in her case. Thus, for purposes of this motion, this Court assumes that the New York Civil Service Law procedure for the placement of employees on medical leave is adequate to afford procedural due process. The Fifth and Fourteenth Amendments protect against deprivations of "life, liberty, or property, without due process of law." The due process accorded should not turn on which of the three deprivations takes place. Thus, the *Zinermon* Court eschewed a "categorical distinction between a

---

**3.** Plaintiff alleges a violation of her right to equal protection, but the complaint does not allege that Defendants discriminated against Plaintiff on any grounds. Therefore, Plaintiff's equal protection claim under 42 U.S.C. § 1983, as well as her claim under 42 U.S.C. § 1981, are dismissed.

Plaintiff further alleges that her "liberty interest in her reputation as a competent employee ... was substantially and significantly damaged by the actions and conduct of the Defendant parties." Complaint ¶ 60. However, plaintiff fails to allege that the government made public any false information about her. *See Bishop v. Wood*, 426 U.S. 341, 348 [96 S.Ct. 2074, 2079, 48 L.Ed.2d 684] (1976); *Gentile v. Wallen*, 562 F.2d

193, 197 (2d Cir.1977). Therefore, the complaint does not state a claim for a violation of due process on grounds of deprivation of liberty interest in reputation, and this claim is also dismissed.

Finally, Plaintiff asks this Court to "[a]ssume pendent jurisdiction over the interrelated State claims and causes of action," Complaint ¶ 65(b), but the complaint does not specifically allege any such state claims, and thus none are addressed here.

**4.** The HRA, as an agency of the City of New York, is encompassed by the *Monell* doctrine. *See id.* [436 U.S.] at 690 & n. 55 [98 S.Ct. at 2035 & n. 55].

deprivation of liberty and one of property." 110 S.Ct. at 986–87. It stated:

> [T]he reasoning of *Parratt* and *Hudson* emphasizes the State's inability to provide predeprivation process because of the random and unpredictable nature of the deprivation, not the fact that only property losses were at stake. In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.

*Id.* 110 S.Ct. at 987.

In *Zinermon*, the plaintiff alleged that he was admitted as a "voluntary" patient to a mental hospital although he was not competent to give his informed consent and was not provided the precommitment process established by Florida statute for the admission of "involuntary" patients. In holding that the defendants were not entitled to a dismissal of the complaint on the grounds that their actions were random and unauthorized, the *Zinermon* Court stressed the broad power the State had delegated to the defendants to admit patients, noting that any erroneous deprivation would occur, "if at all, at a specific, predictable point in the admission process." *Id.* 110 S.Ct. at 989. Thus, predeprivation due process was possible. In fact, a statutory procedure for involuntary placement that required a court hearing existed. The defendants were alleged to have failed to provide the plaintiff with those safeguards. In the Supreme Court's words, the defendants were alleged to have "disregarded their duty to ensure that the proper procedures were followed," *id.*, and the Court found that, despite the existence of a postdeprivation tort remedy for allegedly unlawful confinement, *id.* at 979, the plaintiff

had stated a valid procedural due process claim.[5]

In *Patterson*, a state prisoner allegedly was placed in isolation by officials in violation of state law and without being afforded a prior hearing that conformed to due process requirements. New York's Code of Rules and Regulations provided procedures for confinement in a Special Housing Unit, but the hearing officer allegedly failed to follow them. *See* 761 F.2d at 889–90. As in *Zinermon*, the court refused to label defendant's placement in isolation a "random and unauthorized" deprivation, stating that "here the responsible state officials who had the power to grant appellant a hearing obviously knew that appellant was in peril of being deprived of his liberty interest." *Id.* at 892. The court noted that "it is beyond cavil that due process requires more than the mere *promulgation* of laws and regulations which, if followed, would preserve the most fundamental of rights" and that "the execution of those laws and regulations also must conform to due process." *Id.* at 891 (original emphasis).

■ Under the reasoning in *Zinermon* and *Patterson*, Plaintiff states a valid procedural due process claim. The departure from established predeprivation procedures in the instant case is not "random and unauthorized" as those terms were applied in *Parratt* and *Hudson*. *See Zinermon*, 110 S.Ct. at 989–90 (distinguishing *Parratt* and *Hudson*); *Patterson*, 761 F.2d at 892 (same). Here, as in *Zinermon* and *Patterson*, a predeprivation procedure was provided for by state law but was not followed. Had Plaintiff received the required notice in writing, she might have successfully contested her placement on medical leave according to the procedures in section 72 or received the neurological workup suggested by Dr. Gorham and returned to

---

**5.** Because the defendants' actions were not random or unpredictable, the *Zinermon* Court found that the case was not controlled by *Hudson v. Palmer*, 468 U.S. 517 [104 S.Ct. 3194, 82 L.Ed.2d 393] (1984) (prisoner alleged that prison guard deliberately and maliciously destroyed prisoner's property), and *Parratt v. Taylor*, 451 U.S. 527 [101 S.Ct. 1908, 68 L.Ed.2d 420] (1981) (state prisoner alleged that his mail-order materials were negligently lost by prison employees), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 [106 S.Ct. 662, 88 L.Ed.2d 662] (1986). In those cases, the Supreme Court had found that, since the alleged deprivations of property were impossible for the State to predict, no meaningful predeprivation hearing could be provided, and therefore postdeprivation procedures afforded due process.

work. The availability of an Article 78 proceeding after the fact does not excuse the failure to follow procedures before the deprivation took place. *See Patterson*, 761 F.2d at 891, 892.

Defendants contend that Plaintiff's reliance on *Zinermon* and *Patterson* is "misplaced" and that *Marino*, which they assert is "indistinguishable" from the instant case, governs. Def. Reply Mem. at 7. In *Marino*, the plaintiff, a traffic enforcement agent, alleged that he was deprived of a property interest in his job without procedural due process when an Administrative Law Judge (ALJ) failed to strike the testimony of a witness at an administrative hearing. 837 F.2d at 47. Defendants argue that *Marino* is directly analogous to the instant case because in both cases a loss of employment was at stake, procedural mechanisms existed and were not themselves under scrutiny, and the postdeprivation remedy of an Article 78 proceeding was available. Def.Mem. in Supp. of Mot. to Dismiss at 14–16.

In *Marino*, however, the court found that the plaintiff was "entitled to, *and had,* a predismissal hearing." *Id.* at 47 (emphasis added). The ALJ had committed an "evidentiary error," *id.* at 46, 47, which the court assumed for purposes of the motion was of constitutional magnitude. It was this evidentiary error that was alleged to have caused the loss of plaintiff's employment without due process; the ALJ had not failed to follow the process prescribed by law. The court found that the evidentiary error was too random to permit the State to provide predeprivation process. Moreover, the court stated, the plaintiff did not show that postdeprivation remedies were inadequate. Thus, the court held that the plaintiff had failed to state a valid procedural due process claim. *See id.* at 47.[6]

## 2. Plaintiff's Motion for Summary Judgment

■ Defendants assert that Plaintiff's summary judgment motion should be dismissed for her failure to comply with Rule 3(g) of the Civil Rules of the Southern District of New York, which requires a statement of the material facts as to which the moving party contends there is no genuine issue to be tried. However, since Plaintiff is proceeding pro se, this Court declines to dismiss her motion on this purely technical ground. *Cf. Haines*, 404 U.S. at 520–21, 92 S.Ct. at 596 (pro se pleadings to be accorded greater leniency than those drafted by attorneys).

Plaintiff has failed, however, to set forth in her supporting affidavit the damages to which she claims she is entitled. Accordingly, in the event she were successful in her motion, full summary judgment could not be entered. Accordingly, if Plaintiff is moving for full summary judgment she should separately state the loss of salary claimed and the period for which she should be compensated and should itemize any other damages. Plaintiff upon becoming aware of her rights was under a duty to mitigate her damages. It appears that the deprivation, if any occurred, might have affected Plaintiff only for a short period of time, and thus her damages may not be extensive. Accordingly, decision on Plaintiff's cross-motion for full summary judgment is held in abeyance until February 7, 1992, to give Plaintiff time to file a statement separately stating and itemizing her damages and setting forth the facts, including relevant time periods, on which her assessment is based.

Defendants' 3(g) statement is also inadequate in that it merely raises questions and does not support its opposition with citations to an affidavit showing that there is a true issue of fact herein. Although Plain-

---

**6.** *Katz v. Klehammer*, 902 F.2d 204 (2d Cir. 1990), also is not inconsistent with *Patterson* and *Zinermon*. In *Katz*, plaintiff alleged, among other things, that defendants deprived plaintiff of " 'either a property or liberty interest' " when they refused, in violation of the Private Finance Housing Law, to allow him access to the financial records of a housing development subsidized by New York City and in which plaintiff was a tenant-shareholder. *Id.* at 207 (quoting complaint). The court held that the plaintiff had not stated a valid procedural due process claim. In *Katz*, unlike in *Patterson* and *Zinermon*, plaintiff did not allege that defendants failed to follow established *predeprivation* procedures.

tiff failed to file a 3(g) statement, she did submit an affidavit alleging the facts upon which her claim is based. Defendant Rosen should refer to Plaintiff's affidavit in place of a 3(g) statement. Defendant Rosen is ordered to file a proper 3(g) statement and an affidavit or affidavits by a person or persons having knowledge of the facts and demonstrating that Plaintiff's allegations of fact are truly in contest. Defendant's papers must be filed by February 14, 1992.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted with respect to the City of New York and the HRA and denied with respect to Defendant Rosen. Plaintiff's cross-motion for summary judgment is held in abeyance pending the filing of the papers specified above.

IT IS SO ORDERED.